**Lloyd A. WALLACE, Plaintiff**

v.

**Warren BURBURY, et al., Defendants**

**No. 3:02CV7384.**

United States District Court, N.D. Ohio, Western Division.

June 5, 2003.

Lloyd A. Wallace, Marion, OH, pro se.

Todd R. Marti, Office of the Attorney General, State of Ohio, Corrections Litigation Section, Columbus, OH, for Defendants.

## ORDER

CARR, District Judge.

This is a pro se prisoner civil rights case in which plaintiff, an Orthodox Jew, alleges that prison officials violated his constitutional and statutory rights by refusing to accommodate his religious beliefs. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending is defendants' motion for summary judgment. For the following reasons, defendants' motion shall be granted.

## BACKGROUND

Plaintiff Lloyd A. Wallace is an inmate at North Central Correctional Institute (NCCI) in Marion, Ohio. Plaintiff brings this case against NCCI Chaplain Warren Burbury, NCCI Chaplain Tim Smith, and NCCI Deputy Warden Margaret Lee.[1]

In 1998, plaintiff claims he began the study of Judaism while incarcerated at NCCI. In June, 2000, plaintiff claims he filed a "Request for Religious Accommodation," and was thereafter placed on a list of inmates permitted to participate in Jewish holiday services.

In January, 2002, plaintiff claims he contacted NCCI Chaplain Tim Smith regarding the availability of food items and materials necessary for plaintiff to celebrate Passover in March, 2002. According to plaintiff, the Chaplain advised him that the prison would provide all the necessary materials for the religious observance.

Shortly before the start of Passover, plaintiff claims he was informed by Chaplain Smith and Chaplain Burbury that NCCI would no longer provide religious accommodation services to plaintiff. Plaintiff claims he was told he was "not Jewish enough." Complt. ¶ 10. Consequently, plaintiff was unable to independently obtain the necessary materials to observe the Passover holiday. Plaintiff claims that throughout Passover, he requested permission to attend religious services and obtain kosher meals but was consistently denied.

On April 15, 2002, plaintiff filed an Informal Complaint Resolution with NCCI Deputy Warden Margaret Lee. On April 18, 2002, Lee informed plaintiff that NCCI was not required to accommodate plaintiff's religious requests until he went through "a formal conversion process with a Rabbi." Complt. at Ex. 1. Lee further explained that NCCI had only accommodated plaintiff's religious requests for the previous two years because another Jewish inmate enjoyed such accommodations.

On April 23, 2002, plaintiff filed a Notification of Grievance with the Inspector of Institutional Services. The inspector found that plaintiff's grievance was not actionable for two procedural reasons. First, plaintiff failed to file a "Request for Religious Accommodation" form, and, accordingly, he failed to follow the procedural requirements outlined in Ohio Department of Rehabilitation and Correction

---

**1.** Plaintiff also named NCCI Inspector Larry Yoder as a defendant. Yoder was subsequently dismissed pursuant to 28 U.S.C.1915(e) on December 6, 2002.

(ODRC) Policy 309–01. Second, plaintiff's informal complaint was untimely.

On May 3, 2002, plaintiff filed an Appeal of the Disposition of Grievance to the Office of the Chief Inspector. Plaintiff claims he did not receive an acknowledgment of receipt or response from the Office of the Chief Inspector.

In July, 2002, plaintiff sought relief through individuals outside the NCCI. On July 2, 2002, plaintiff wrote to the Ohio Attorney General's office. In a response dated July 12, 2002, an Assistant Attorney General informed plaintiff that even though the office was forwarding plaintiff's letter to the Religious Services Administrator of the ODRC, it was plaintiff's responsibility, under ODRC Policy 309–01, to appeal any adverse decision regarding religious accommodation directly to his institution. On July 14, 2002, plaintiff wrote the Director of Religious Services at the ODRC inquiring whether the Attorney General's office forwarded his previous letter. Plaintiff claims that the ODRC has not responded to his letter.

On July 30, 2002, plaintiff filed this lawsuit seeking injunctive relief and compensatory damages. Plaintiff claims that defendants' refusals to accommodate his religious requests violated his First Amendment right to exercise religion, his Fourteenth Amendment right to equal protection under the law, and his rights under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc. Defendants move for summary judgment arguing plaintiff has failed to exhaust available administrative remedies.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

Defendants move for summary judgment for failure to exhaust available administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Specifically, defendants argue that plaintiff's use of the general inmate grievance procedure was insufficient to satisfy the requirements of § 1997e(a). In the alternative, if the general inmate grievance procedure was sufficient under § 1997e(a), defendants argue plaintiff failed to timely file his informal complaint.

### I. Use of the General Inmate Grievance Procedure

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The procedure for inmates to present grievances relating to conditions of their incarceration is set forth in O.A.C. § 5120–9–31. The Sixth Circuit has held that the exhaustion requirements of the O.A.C. are mandatory. *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir.1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.1998). In *Brown*, the court held that a prisoner has the burden of demonstrating that he has exhausted available administrative remedies. 139 F.3d at 1104. In fact, an inmate who sues in federal court must attach to his § 1983 complaint the administrative decision, if it is available, showing the administrative disposition of his complaint. *Id.*

The general inmate grievance procedure under O.A.C. § 5120–9–31 is comprised of three steps. First, an "inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." O.A.C. § 5120–9–31(J)(1). Second, if the inmate is dissatisfied with the informal complaint response, the inmate must notify the inspector of institutional services of his grievance. O.A.C. § 5120–9–31(J)(2). Third, if the inmate is dissatisfied with the institutional inspector's resolution, he must then appeal to the chief inspector of institutional services. O.A.C. § 5120–9–31(J)(3).

Under O.A.C. § 5120–9–31(B), however, use of the general inmate grievance procedure is not "an additional or substitute appeal process for those issues or actions which already include an appeal mechanism beyond the institutional level."

■ The ODRC has promulgated specific policy and procedures for handling inmates' religious requests. ODRC Policy 309–01(VI)(B), entitled "Request for Accommodation of Religious Beliefs," provides:

3. The inmate shall submit the completed [Request to Consider Change and/or Accommodation of Religious Practice] form to the chaplain or the warden's designee, who will conduct any necessary inquiry or investigation into the matter. The chaplain/warden's designee may require the inmate to collect or furnish other information if such information is known or reasonably available to the inmate.

4. Within fourteen (14) working days of receipt of the form from the inmate, the chaplain/warden's designee shall make a recommendation in writing to the warden to grant or deny the requested accommodation.

5. The warden shall make the final determination to grant or deny the request and shall notify the inmate and the

chaplain/warden's designee of the decision and the reason(s) for it within fourteen (14) working days of receipt of the complete request form and written recommendation.

6. If the request is denied, the inmate may appeal the warden's decision to the appropriate administrator of religious services.

Pl.'s Ex. D.

Plaintiff's grievances involve requests for religious accommodation. Because ODRC Policy 309–01 includes an appeal mechanism beyond the institutional level, under O.A.C. § 5120–9–31(B), ODRC Policy 309–01 is the appropriate administrative procedure for plaintiff's grievances.

Plaintiff used the general inmate grievance procedure, however, and, under O.A.C. § 5120–9–31(B), this was an inadequate substitute. Plaintiff should have followed the religious accommodation procedures outlined in ODRC Policy 309–01. Accordingly, defendants' motion for summary judgment pursuant to § 1997e(a) for failure to exhaust administrative remedies shall be granted. *See e.g., Richardson v. Spurlock,* 260 F.3d 495, 499 (5th Cir.2001) ("Richardson incorrectly filed an administrative appeal instead of a disciplinary appeal. Thus, his failure to exhaust all available administrative remedies precludes this claim.").

Plaintiff argues that he did follow the procedures of ODRC Policy 309–01. Plaintiff contends that he submitted the request for religious accommodation form to NCCI officials in 1998. However, since the autumn months of 2002, prior to filing this lawsuit, plaintiff contends that the form has been missing from his file. Thus, plaintiff argues that he completed the first step of the ODRC Policy 309–01 procedure by filing this initial, yet missing, request in 1998, and he cannot be expected to re-submit forms for each religious holiday accommodation.

Plaintiff's argument fails for two reasons. First, even if plaintiff filed a request for religious accommodation form in 1998, it would be insufficient to exhaust his claims for deprivation of his constitutional and statutory rights occurring in 2002. The statutory objective of the exhaustion requirement is "to give prison administration an opportunity to fix the problem." *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir.2002). Plaintiff's 1998 form would not give prison officials the opportunity to correct the problems beginning in 2002.

■ Second, where a prisoner is notified that a document relating to his grievance has been lost or misfiled, failure to refile constitutes a failure to exhaust the administrative remedy. *See e.g., Jernigan v. Stuchell,* 304 F.3d 1030, 1032–33 (10th Cir. 2002); *Hartsfield v. Vidor,* 199 F.3d 305, 309 (6th Cir.1999). Plaintiff was informed during his appeal to the Inspector of Institutional Services on April 29, 2002, that he failed to file a request for religious accommodation form. Rather than refiling the form, plaintiff jumped to the second administrative step of ODRC Policy 309–01. In July, 2002, he sought an appeal from the ODRC's Director of Religious Services. Plaintiff has, therefore, failed to exhaust administrative remedies under § 1997e(a). *See e.g., Pozo,* 286 F.3d at 1024 ("[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating.").

Because plaintiff was required to follow the procedures of ODRC Policy 309–01, he was required to file—or refile—a request for religious accommodation form. Plaintiff has failed to do so, and the form is not attached to plaintiff's complaint in violation of the rule established in *Brown v.*

*Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). Therefore, there is no issue of material fact as to whether plaintiff exhausted his administrative remedies as required by § 1997e(a). Defendants' motion for summary judgment shall therefore be granted.

## II. Failure to Timely File the Informal Complaint

■ Defendants argue, in the alternative, that if the general inmate grievance system was an adequate substitute under O.A.C. § 5120–9–31(B), plaintiff still fails to satisfy the requirements of § 1997e(a) because he did not timely file his informal complaint.

Under the first step of Ohio's general inmate grievance procedure, "[w]ithin fourteen calendar days of the date of the event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." O.A.C. § 5120–9–31(J)(1).

According to plaintiff, Passover began on March 27, 2002. He admits that a week before the holiday began, he was informed by a NCCI chaplain that his religious accommodation request for the Passover holiday was denied. Plaintiff filed his informal complaint, however, on April 15, 2002. Therefore, fourteen days passed between the time plaintiff learned that his request for a religious accommodation had been denied and the day plaintiff filed an informal complaint.

Plaintiff argues that the fourteen day deadline should be extended to account for the five calendar days of Passover that he was religiously prohibited from working. Plaintiff also argues that because his requests for religious accommodation were denied through the week of Passover, the "event giving rise to the complaint" occurred daily through April 4, 2002.

To allow a filing deadline to toll with a continuous violation, however, would undermine the very purpose of the deadline, which is to limit the time to file a claim. The event giving rise to the complaint was the date in March, 2002, when plaintiff first learned that NCCI would not honor his request to observe Passover. All subsequent grievances stem from that initial event. The filing of plaintiff's informal grievance was therefore untimely, and failure to file a timely grievance does not constitute an exhaustion of available administrative remedies. *See e.g., Pozo*, 286 F.3d at 1025 ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

## CONCLUSION

It is, therefore,

ORDERED THAT

Defendants' motion for summary judgment be, and hereby is, granted. Further, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could be taken in good faith.

**So ordered.**