DLD-296                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1963
_____

FRANCISCO GONZALEZ,
Appellant

v.

ABIGAIL LOPEZ DE LASALLE, M.D.; DONNA ZICKEFOOSE;
PRADIP PATEL, M.D.; STEVEN RUFF
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 12-cv-03711)
District Judge:  Honorable Noel L. Hillman
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 29, 2017
Before:  CHAGARES, VANASKIE and KRAUSE, Circuit Judges

(Opinion filed: August 9, 2017)
_____

OPINION*
_____

PER CURIAM

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Francisco Gonzalez, a federal inmate confined at FCI Fort Dix when the relevant events occurred, appeals from the judgment of the United States District Court for the District of New Jersey. We will summarily affirm.

I.

In June 2012, Gonzalez filed an action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against several FCI Fort Dix employees, including Warden Donna Zickefoose, Clinical Director Abigail Lopez De LaSalle, M.D., Pradip Patel, M.D., and "Health Information Tech" Steven Ruff. Gonzalez alleged Eighth Amendment violations based on his exposure to prison environmental conditions that worsened his emphysema, chronic bronchitis, asthma, and chronic obstructive pulmonary disease ("COPD"); failure to grant a medical transfer; and inadequate medical care. He claimed that he had undergone five emergency hospitalizations since April 2011, brought about by exposure to environmental tobacco smoke ("ETS"), asbestos, and lead-based paint; extreme temperature fluctuations; lack of air conditioning; and exposure to jet fuel emissions from the adjoining Air Force Base.

In December 2012, the District Court screened Gonzalez's complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, and ordered dismissal of defendant Lopez De LaSalle without prejudice. At the close of discovery, the remaining defendants filed a motion for summary judgment. By order entered on February 27, 2015, the District Court granted defendants' motion for summary judgment, with the exception of Gonzalez's Eighth Amendment claim that Dr. Patel retaliated against him by revoking his

2

first floor pass in September 2011, because Gonzalez refused to identify inmates who were smoking. Gonzalez filed a motion for reconsideration, which the District Court denied by order entered on December 18, 2015.

While Gonzalez's motion for reconsideration was under review by the District Court, Dr. Patel, the only remaining defendant, filed a motion for summary judgment. By order entered on July 22, 2016, the District Court denied without prejudice Dr. Patel's motion for summary judgment as there were "unaddressed discrepancies in the medical records that precluded judgment in Patel's favor." In September 2016, Dr. Patel renewed his motion for summary judgment, which was ultimately granted by the District Court on April 7, 2017. Gonzalez appeals.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Because Gonzalez has been granted in forma pauperis status pursuant to 28 U.S.C. § 1915, we review this appeal for possible dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). We may summarily affirm under Third Circuit LAR 27.4 and I.O.P. 10.6 if the appeal lacks substantial merit. We exercise plenary review over a district court order for summary judgment. Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate the absence of a genuine

3

dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the nonmoving party then must present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1), (e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

III.

To succeed on an Eighth Amendment claim for the denial or delay of medical care, Gonzalez is required to demonstrate that the defendants were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). Deliberate indifference can be shown by a prison official's "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05. We have also found deliberate indifference where prison officials delay necessary medical treatment based on a non-medical reason. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

We agree with the District Court that Warden Zickefoose and Ruff are entitled to summary judgment on Gonzalez's denial of medical care claim. Gonzalez alleges that, beginning in August 2011, he informed prison officials that "various environmental factors" at FCI Fort Dix were worsening his serious health conditions, and repeatedly requested a transfer to another facility. His requests were denied by Warden Zickefoose and Ruff, who relied on Dr. Patel's judgment that Gonzalez did not qualify for a medical transfer.

4

The record shows that there is no genuine dispute that Gonzalez received frequent medical evaluations and treatment at Fort Dix beginning in January 2009, the month he arrived. Dr. Patel evaluated Gonzalez as a Care Level 2 inmate – a stable outpatient with chronic illness able to perform activities of daily living, and thus not qualified for medical transfer. Although Gonzalez required several hospitalizations for COPD-related illnesses, the medical staff approved his hospitalizations, and the record supports Dr. Patel's opinion that Gonzalez's illnesses, which were chronic and not curable, could be adequately managed at Fort Dix, with outside treatment when needed. Warden Zickefoose and Ruff, as non-medical professionals, were entitled to rely on and defer to the medical judgment of Dr. Patel, that Gonzalez was not qualified for medical transfer. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).[1] Accordingly, the District Court properly granted summary judgment on this claim.

IV.

Gonzalez's Eighth Amendment claim of deliberate indifference by the prison staff to his serious medical needs is equally unpersuasive. Gonzalez alleges that prison staff

---

[1] To the extent that Gonzalez seeks to hold Warden Zickefoose liable under the Eighth Amendment in her role as a supervisor, his claim must fail. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (holding "Government officials may not be liable for the constitutional conduct of their subordinates under a theory of respondeat superior").

were deliberately indifferent to his serious medical needs because he was denied a first floor pass and a lower bunk pass when he first entered FCI Fort Dix; he was denied adequate medical care because it was seven months before he was evaluated by a pulmonologist after transferring to Fort Dix; and his prescriptions were not timely filled and were substituted with other medications.

With regard to the first floor and lower bunk passes, the District Court correctly noted that Gonzalez was denied a first floor pass and lower bunk pass by Warden Zickefoose when he first entered FCI Fort Dix because there was no clinical evidence of respiratory distress in Gonzalez's February 9, 2009 medical record. While Gonzalez may have suffered some shortness of breath when climbing stairs or into an upper bunk, he was being treated by the medical staff for these symptoms, and Warden Zickefoose was entitled to rely on and defer to the medical staff. See Spruill, 372 F.3d at 236.[2] Moreover, the record indicates that the passes were subsequently approved in August 2009 and renewed yearly through 2012.[3]

_____

[2] Gonzalez's claim against Warden Zickefoose for his lack of an evaluation by a pulmonologist during his first seventh months of incarceration at Fort Dix likewise fails, as Gonzalez received regular evaluation and treatment from primary care providers from January 2009 until he began seeing a pulmonologist at Fort Dix in August 2009, and Warden Zickefoose was entitled to rely on and defer to the physicians' care.

[3] We agree with the District Court that defendants are entitled to summary judgment on Gonzalez's claim that the medical staff delayed his prescriptions and substituted other drugs for those prescribed by a pulmonologist because Gonzalez offered no evidence from which a reasonable juror could conclude that the defendants intentionally refused to provide treatment, or delayed necessary treatment for a non-medical reason, or prevented him from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. In

Gonzalez's retaliation claim against Dr. Patel for allegedly revoking his first floor pass must also fail. To establish a claim of retaliation, a prisoner must show: (1) that he was engaged in a constitutionally protected activity; (2) that he "suffered some 'adverse action' at the hands of the prison officials"; and (3) that the protected activity was "a substantial or motivating factor" in the prison officials' decision to take the adverse action. Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001). The burden then shifts to the prison officials to prove "that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334. Gonzalez cannot meet this standard.

Gonzalez claims that Dr. Patel revoked his first floor pass September 2011, and moved him to a second floor room, in retaliation for refusing to snitch on other inmates who were smoking. However, as the District Court aptly noted, Gonzalez has not provided any factual support for this allegation and, in fact, the record reveals that Gonzalez was temporarily assigned to the second floor on September 11, 2011, by staff member Leander Batiste, due to bed-space constraints.[4] Gonzalez was not seen by Dr. Patel until October 6, 2011, at which time he complained about the smoking in his unit,

fact, Gonzalez's prescriptions were filled and renewed on multiple occasions, and Gonzalez provided no evidence that particular medications were exclusively ordered and could not be substituted.

[4] Defendants provided evidence that on the East Compound of FCI Fort Dix, where Gonzalez was located, there are beds for approximately 1,850 inmates, but only 112 are on the first floor. As a result, there are times when the number of inmates with first-floor passes exceeds the number of available beds.

7

and was immediately transferred to the hospital. Upon his return, Patel extended his first-floor pass through the end of 2012. As a result, Gonzalez's retaliation claim is baseless, and to the extent that it is an Eighth Amendment claim, it is meritless.

V.

Gonzalez also alleges that the defendants violated the Eighth Amendment by exposing him to environmental factors, including second-hand tobacco smoke from Ruff and other inmates, jet fumes from a nearby Air Force base, asbestos and lead paint, inadequate air conditioning, and extreme temperature fluctuations. In order to show an Eighth Amendment "conditions of confinement" violation, Gonzalez must show that the defendants knew of and disregarded an excessive risk to his health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Liability for ETS exposure, as a threat to both present and future health, requires proof of (1) exposure to "unreasonably high" levels of ETS contrary to contemporary standards of decency; and (2) deliberate indifference by the authorities to the exposure. See Helling v. McKinney, 509 U.S. 25, 35-36 (1993); Atkinson v. Taylor, 316 F.3d 257, 262-63, 266 (3d Cir. 2003).

We agree with the District Court that Gonzalez fails to satisfy the first Helling prong as he has neglected to submit evidence that he was exposed to unreasonably high levels of ETS. He alleges only that Ruff smoked in his presence, without indicating how many times this occurred, how many cigarettes Ruff smoked, and how long Gonzalez was exposed to the smoke on each occasion. In a similarly vague manner, he claims that one or more unidentified inmates smoked in the bathroom and on a particular floor when

8

a guard was not present, and the smoke entered his room. <u>Helling</u> and <u>Atkinson</u> require more. <u>Compare Helling</u>, 509 U.S. at 35 (holding that inmate, who bunked with cellmate who smoked five packs a day, was exposed to unreasonably high levels of ETS), <u>and</u> <u>Atkinson</u>, 316 F.3d at 264-65 (holding that inmate, who shared cell with two constant smokers for seven months, was exposed to unreasonably high levels of ETS), <u>with</u> <u>Richardson v. Spurlock</u>, 260 F.3d 495, 498 (5th Cir. 2001) (finding that sitting near smokers sometimes is not unreasonable exposure). While the smoke may have caused Gonzalez discomfort, it did not rise to the level of a constitutional violation.

Assuming arguendo that Gonzalez could establish the first <u>Helling</u> prong, the record does not support a finding of deliberate indifference by the defendants. The defendants provided evidence that FCI Fort Dix prohibits smoking in its facilities, and enforces the regulation against inmates by providing strong sanctions. In his summary judgment affidavit, Hearing Office Anthony Boyce stated that Fort Dix has sanctioned sixty inmates for tobacco-related violations since January 2010. Moreover, when Gonzalez submitted an "Inmate Request to Staff" to Warden Zickefoose on September 11, 2011, detailing the second-hand smoke issue, Zickefoose acknowledged his complaints and told him to identify who was smoking, but he feared reprisal by other inmates. As a result, Gonzalez has failed to show that the defendants were deliberately indifferent to his complaints, and summary judgment was appropriate for this claim.[5]

---

[5] Gonzalez's Eighth Amendment claims based on exposure to asbestos and lead paint, jet fuel emissions, lack of air conditioning, and frequent temperature fluctuations fail under

## VI.

For the foregoing reasons, we conclude that there is no substantial question presented by this appeal, and will thus summarily affirm the District Court's orders granting summary judgment to the defendants.

---

the same analysis.  Gonzalez has provided no evidence of the level of exposure of these hazards, let alone any medical evidence that they constituted a serious risk to his health.